IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:18CR3079 |
| vs. | |
| HERIBERTO NEGRETE-ROJAS, | **FINDINGS, RECOMMENDATION, AND ORDER** |
| Defendant. | |

This matter is before the court on Defendant's motion to dismiss his indictment for illegal reentry in violation of 8 U.S.C. § 1326(a) & § 1326(b)(2). (Filing No. 21). For the following reasons, Defendant's motion to dismiss should be denied.

I.   Background

The indictment charges that on July 25, 2018, Defendant, a non-citizen who was previously excluded, deported, and removed from the United States to Mexico, was found in the United States after having reentered without the permission of the United States government in violation of 8 U.S.C. § 1326(a) and 8 U.S.C. § 1326(b)(2). (Filing No. 1).

On September 19, 2018, Defendant filed a motion to dismiss the indictment, arguing that under the Supreme Court's ruling in Pereira v. Sessions, 138 S. Ct. 2105 (2018), the "Order to Show Cause and Notice of Hearing" ("OSC") that prompted his October 1996 removal was defective because it failed to indicate the date and time of the removal proceeding. (Filing No. 21). Defendant asserts that due to this failure, the removal order entered by the Immigration Judge is void for lack of jurisdiction, and for denial of due process. Defendant argues that since the

prior removal is void, Defendant cannot be charged with illegal reentry following a prior removal, and the indictment under 8 U.S.C. § 1326 must be dismissed.

The government argues that the issue of jurisdiction is prescribed by regulation and not by statute; that only regulations promulgated to implement the Immigration and Nationality Act ("INA") (8 U.S.C. § 1101 et seq. (1996)), define when or how jurisdiction vests with the Immigration Court. (Filing No. 27, at CM/ECF p. 3–4). Applying these regulations, the government contends jurisdiction was properly exercised by the Immigration Court at each stage throughout the adjudication of Defendant's prior removal. See, 8 C.F.R. § § 3.14(a), 3.15(b). The government argues that the Supreme Court's narrow Pereira holding is inapplicable to Negrete-Rojas's claim, and any defect in the OSC was non-prejudicial and irrelevant to the validity of Defendant's 1996 removal.

II.    Facts

On October 31, 2018, an evidentiary hearing was held on Defendant's motion to dismiss. (See, Filing No. 30). Both parties offered exhibits in support of their briefs, the authenticity of which neither party contests. (See, Filing No. 23; Filing No. 26). The court accepts the facts within the parties' exhibits as undisputed for the purposes of the pending motion. On December 3, 2018, this court received additional evidence of a recording of Defendant's October 25, 1996 deportation hearing. It was marked and received as government's exhibit 20, but the recording is inaudible due to poor sound quality.

On May 13, 1994, Defendant was convicted in the New Jersey Superior Court in Passaic County on a charge of unlawful possession of a .22 caliber handgun. On July 13, 1994, while serving his sentence on the gun charge,

Defendant was personally served with an OSC and ordered to appear before the Immigration Court on "a date and time to be set." (Filing No. 23-2, at CM/ECF p. 3).

The OSC was written in both English and Spanish and notified Negrete-Rojas that he was to appear for a hearing before an Immigration Judge, to be "scheduled no sooner than 14 days" after he received the OSC, unless Negrete-Rojas expressly requested an earlier hearing date. (Filing No. 23-2, at CM/ECF p. 2). The OSC included a certificate of translation and oral notice that the OSC was read to Negrete-Rojas in both the Spanish and English languages. (Filing No. 23-2, at CM/ECF p. 2). By signature, Negrete-Rojas acknowledged receipt of the form. (Filing No. 23-2, at CM/ECF p. 5).

On October 8, 1996, Negrete-Rojas signed a "Request for Prompt Deportation Hearing," wherein he chose "to be deported as soon as possible." ("Quiero ser deportado lo mas antes possible.") (Filing No. 26-3). Defendant further certified, "I have not been coerced, threatened or enticed in any way to sign this contract." (Filing No. 26-3). A "Notice to EOIR: Alien Address" was also filed on October 8, 1996, alerting the office of the immigration judge that Negrete-Rojas had been detained by INS with a copy of the form provided to Defendant for "notification of jurisdiction/commencement of proceedings." 8 C.F.R. 3.14. (Filing No. 26-4).

On October 25, 1996, an Immigration Judge in Oakdale, Louisiana ordered Negrete-Rojas deported from the United States to Mexico, in part "upon the basis of respondent's admissions." (Filing No. 23-1). The order indicates Defendant waived his right to appeal. (Filing No. 23-1). On November 4, 1996, Negrete-Rojas was deported to Mexico. (Filing No. 26-2).

3

On January 8, 2014, Negrete-Rojas was again encountered by immigration officials at or near Omaha, Nebraska. (Filing No. 26-2, at CM/ECF p. 3). On April 4, 2014, Negrete was issued a Notice of Intent/Decision to Reinstate Prior Order and was convicted under 8 U.S.C. § 1326(a) & (b)(1) and sentenced to five months imprisonment. (Filing No. 26-2, at CM/ECF p. 3). On June 23, 2014, Defendant was removed to Mexico. (Filing No. 26-2, at CM/ECF p. 3).

On September 13, 2014, Negrete-Rojas was intercepted a third time by immigration officials at or near McAllen, Texas. (Filing No. 26-2, at CM/ECF p. 3). Defendant was issued a Notice of Intent/Decision to Reinstate Prior Order. Subsequently, on September 15, 2014, Negrete-Rojas was convicted under 8 U.S.C. § 1325(a)(1) and sentenced to sixty-days confinement. Negrete-Rojas was removed to Mexico on November 13, 2014. (Filing No. 26-2, at CM/ECF p. 3).

In 2018, Negrete-Rojas again came to the attention of immigration officials following his arrest for DUI in Lincoln, Nebraska. (Filing No. 26-2, at CM/ECF p. 2). On July 12, 2018, immigration officials contacted Negrete-Rojas at his place of employment. (Filing No. 26-2, at CM/ECF p. 2). Defendant was fingerprinted and his identity verified, and he was placed under arrest.

Negrete-Rojas was issued a Notice of Intent/Decision to Reinstate Prior Order, and indicted on one count of illegal reentry of a removed alien after aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) & (b)(2). (Filing No. 1). On September 19, 2018, Defendant filed a motion to dismiss this indictment. (Filing No. 21).

III. Analysis

4

To convict a non-citizen defendant of illegal reentry, the government must prove the defendant: (1) is not a citizen of the United States; (2) was previously ordered removed, and was removed from the United States; and following that removal, (3) entered, attempted to enter, or was found back in the United States without the consent of the United States government. 8 U.S.C. § 1326(a). In his motion to dismiss, Defendant collaterally attacks the prior deportation order, thereby arguing the government cannot prove an essential element of the current indictment.

A. Jurisdiction

Negrete-Rojas argues the 1996 Immigration Court lacked subject matter jurisdiction to order Defendant's removal, and its removal order was void ab initio. Relying on the recent decision in United States v. Virgen-Ponce, 320 F. Supp. 3d 1164 (E.D. Wash. 2018), Defendant argues, "[l]ike the defective removal order in Virgen Ponce, the removal order issued against Negrete-Rojas in 1996 was done so without jurisdiction because of the failure to give him proper notice as required by 8 U.S.C. § 1229(a)." (Filing No. 22, at CM/ECF p. 6). Therefore, Negrete-Rojas asserts that his "[i]ndictment must be dismissed because of the same reasoning used by Judge Nielsen in Virgen-Ponce." (Filing No. 22, at CM/ECF p. 6). The Virgen-Ponce court found that under the Supreme Court's recent decision in Pereira v. Sessions, 138 S. Ct. 2105 (2018), if the charging document filed in the Immigration Court is defective because it fails to specifically state the date and time of the removal hearing, the Immigration Judge lacks jurisdiction to enter an order of removal. (Filing No. 22, at CM/ECF p. 6); Virgen-Ponce, supra.

5

The Supreme Court's Pereira holding solely addressed an issue of statutory construction; that is, whether a Notice to Appear ("NTA") that omitted the time and place of an initial removal hearing triggered the "stop-time" rule. Pereira, 138 S. Ct at 2110 ("The *narrow* question in this case lies at the intersection of those statutory provisions [8 U.S.C. § 1229b(b)(1) and § 1229b(d)(1)(A)] . . . .") "The Court granted certiorari in this case to resolve division among the Courts of Appeals on a simple, but important, question of statutory interpretation: Does service of a document styled as a 'notice to appear' that fails to specify 'the items listed' in § 1229(a)(1) trigger the stop-time rule?" Id. at 2113 (emphasis added) (internal citations omitted). The Court held that "notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under § 1229(a)' and therefore does not trigger the stop-time rule."[1] Id at 2110.

Defendant now asks this court to extend this narrow ruling and find that an Immigration Court lacks subject-matter jurisdiction over an alleged illegal alien if the NTA, or here OSC,[2] presented to that person fails to state the time and place of the proceeding with specificity. (Filing No. 18, at CM/ECF p. 6). Under 8 C.F.R. § 1003.14, "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." Defendant thereby contends, as a handful of district courts have held,

---

[1] Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), the stop-time rule facilitates non-citizens' eligibility for cancellation of removal if they can demonstrate continuous physical presence in the United States for ten years or more. 8 U.S.C. § 1229(b)(b)(1)(A).

[2] Under the currently enacted INA, the removal charging document that specifies the charges and time and place of hearing is contained within an NTA. This information, prior to 1997, was referenced within "Notices," including an "Order to Show Cause" and potentially a "separate "Notice of time and place of proceedings." Compare 8 U.S.C. §1229 (2018) with 8 U.S.C. 1252b(a).

6

that the Immigration Court lacks jurisdiction over a case unless the charging document is accompanied by a Notice to Appear which specifically states a date and time of hearing. (Filing No. 22, at CM/ECF p. 6). The court refuses to adopt this expansive reading of Pereira's narrow holding.

The INA contains no language explaining how the Immigration Court obtains jurisdiction over removal proceedings. Rather, Congress delegated authority to the Attorney General to "establish such regulations . . . delegate such authority and perform such other acts as the Attorney General determines to be necessary . . ." to implement the INA. 8 U.S.C. § 1229(a); 8 U.S.C. § 1103(g)(2). "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." Chevron, U.S.A., Inc. v. Nat. Res. Def. Coun., Inc., 104 S. Ct. 2778, 2782 (1984). As applied to the INA, falling squarely within this delegation is the duty to establish how and when the Immigration Court obtains removal jurisdiction. That jurisdictional language is provided in 8 C.F.R. § 3.14(a).

Under 8 C.F.R. § 3.14(a), the Immigration Court is vested with jurisdiction over a removal proceeding when the OSC provides the following information to the Executive Office for Immigration Review:

> (1) The nature of the proceedings against the alien;
> (2) The legal authority under which the proceedings are conducted;
> (3) The acts or conduct alleged to be in violation of law;
> (4) The charges against the alien and the statutory provisions alleged to have been violated;
> (5) Notice that the alien may be represented, at no cost to the government, by counsel or other representative authorized to appear pursuant to 8 CFR 292.1;
> (6) The address of the Office of the Immigration Court where the Service will file the Order to Show Cause; and

> (7) A statement that the alien must advise the Immigration Court having administrative control over the Record of Proceeding of his or her current address and telephone number and a statement that failure to provide such information may result in an in absentia hearing in accordance with § 3.26.

8 C.F.R. § 3.15(b). A notice of the time or place of hearing is not mentioned in 8 C.F.R. § 3.15(b), indicating by its absence that it need not be included in the charging document for jurisdiction to vest in the Immigration Court. Moreover, nothing in 8 U.S.C. § 1252b by its express terms, or elsewhere in the INA, indicates that jurisdiction will not vest unless the statutorily-defined hearing notice requirements are included in the OSC. Section 1252b solely references the type of notice provided to the alien, and it is not mentioned, even by cross-reference, in 8 C.F.R. § 3.15(b).

While the defendant argues the date and time of hearing was required under Pereira, the question presented and the court's holding in Pereira discusses the necessity of providing the date and time of hearing, and the impact of failing to provide that information, when applying the stop-time rule in 8 U.S.C. § 1229(b)(d)(1). Pereira does not define, or even mention, when an Immigration Court obtains jurisdiction over an immigration proceeding, and it does not limit the Attorney General's authority to adopt regulations implementing the INA—including the prerequisites for vesting jurisdiction in the Immigration Court.

8 C.F.R § 3.15 defines the necessary contents of an OSC for jurisdiction to vest in the Immigration Court. This agency definition must be heeded. See, In re Old Fashioned Enterprises, Inc., 236 F.3d 422, 425 (8th Cir. 2001) (Where "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."). Although the OSC provided to Negrete-Rojas did not include the

8

date and time of his immigration hearing, it did include all the information necessary to vest jurisdiction under the express terms of 8 C.F.R. 3.15(b). As such, that OSC vested the Immigration Court with jurisdiction to convene and to issue an order requiring Negrete-Rojas's removal. This prior removal order is not void for lack of subject-matter jurisdiction.

    B.    Due Process

Defendant further challenges the prior order of removal under the Due Process Clause. Under United States v. Mendoza-Lopez, 481 U.S. 828 (1987), "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to conclusively establish an element of a criminal offense." Id. at 838. To afford due process, if an administrative determination is centric to a criminal sanction, "there must be some meaningful review of the administrative proceeding". Id. at 837–38 (citations omitted).

Following Mendoza-Lopez, Congress enacted 8 U.S.C. § 1326(d), which outlines what a non-citizen charged with illegal reentry must establish to collaterally attack an underlying deportation. Pursuant to 8 U.S.C. § 1326(d),

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection(a)(1) or subsection (b) unless the alien demonstrates—
>
> (1) The alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) The deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

9

(3) The entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). The defendant bears the burden of proof. See, United States v. Chavez-Alonso, 431 F.3d 726, 728 (10th Cir. 2005).

In Mendoza, the Court held that the Government cannot rely on prior deportation orders as reliable proof of an element of the criminal offense of illegal reentry where "[t]he Immigration Judge permitted waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation." Mendoza-Lopez, 481 U.S. at 840. Since the removal appeal waivers in Mendoza were not considered or intelligent, respondents were deprived of judicial review in violation of their due process rights. Mendoza-Lopez, 481 U.S. at 840.

To collaterally attack his 1996 removal order, Negrete-Rojas must show that he "exhausted any administrative remedies that may have been available to seek relief against the order." 8 U.S.C. § 1326(d). "If an alien knowingly and voluntarily waives his right to appeal an order of deportation, then his failure to exhaust administrative remedies will bar collateral attack on the order in a subsequent illegal reentry prosecution under 1326(d)(1)." U.S. v. Tamayo-Baez, 820 F.3d 308 (8th Cir. 2016).

Under the evidence presented, Negrete-Rojas received the OSC and as stated in that document, he was entitled to a removal hearing within 14 days or earlier upon his request. (Filing No. 26-3). He instead chose to "to be deported as soon as possible," (Filing No. 26-3), and he expressly waived his right to appeal the Immigration Judge's 1996 removal order to the Board of Immigration Appeals. (Filing No. 23-1). Negrete-Rojas has neither argued nor presented evidence that any of these decisions were unknowing or involuntary. Defendant has therefore

10

failed to prove the first required element for collaterally attacking an immigration order—that he exhausted administrative remedies.

Similarly, Defendant has failed to establish the second element for collateral review; that "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review." 8 U.S.C. § 1326(d)(1). In Mendoza-Lopez, the Court found that since the Immigration Judge's advice was improper or incomplete, Defendant did not knowingly waive his right to appeal. Negrete-Rojas argues "[i]t borders on absurdity to say that Negrete-Rojas was given the opportunity for judicial review when he was never given the date and time of his hearing." (Filing No. 22, at CM/ECF p. 7). But under the facts of this case, Negrete-Rojas received actual notice of the hearing—he was given the opportunity to be present and participate—and he then waived his right to appeal the ruling in writing. (Filing No. 26-3; Filing No. 23-1). Under such facts, the due process analysis does not turn on whether Defendant was told when and where the immigration hearing would be held, but on Defendant's own decision to waive his right to appeal the deportation order. Where the defendant affirmatively chooses not to seek review of a deportation order, including by an Article III tribunal, he cannot thereafter claim the government's actions denied his opportunity for judicial review in violation of his due process rights.

Under the third prong of §1326(d), Defendant must show that "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). An order will be deemed 'fundamentally unfair' if (1) Defendant's due process rights were sullied by defects in his underlying deportation proceeding, and (2) he suffered prejudice because of those defects. United States v. Rodriguez, 420 F.3d 831, 833–34 (8th Cir. 2005). See also, United States v. Vargas-Ortiz, 667 F. App'x 699, 700 (10th Cir. 2016) (quoting United States v. Alvarado-Pineda, 774 F.3d 1198, 1201 (9th Cir. 2014)); United States v. Guardado-Diaz, 2018 WL 2688260 (4th Cir. 2018).

11

"Actual prejudice exists where defects in the deportation proceedings 'may well have resulted in a deportation that would not otherwise have occurred.'" United States v. Torres-Sanchez, 68 F.3d 227, 230 (8th Cir. 1995). However, an error must result in prejudice to render a proceeding fundamentally unfair. United States v. Mendez-Morales, 384 F.3d 927, 931–32 (8th Cir. 2004).

Due process necessitates that a non-citizen be provided notice of the charges he faces, a fair hearing, and an opportunity to be heard. United States v. Santos Larios-Ajualat, 2018 WL 5013522 (D. Kan. 2018); United States v. El Shami, 434 F.3d 659, 665 (4th Cir. 2005)(citing United States v. Torres, 383 F.3d 92, 104 (3rd Cir. 2004). A non-citizen could be unduly subjected to prejudice by an OSC's (or NTA's) failure to include the date and time of a removal hearing by causing the defendant to miss the hearing, depriving him of a meaningful opportunity to confer with counsel, or by leaving the defendant insufficient time to adequately prepare for the hearing. Pereira, 138 S. Ct. at 2115. However, Defendant has not alleged he was prejudiced in any of these ways. Unlike the non-citizen in Pereira, Defendant was personally served with the OSC on July 13, 1994 while in the custody of the New Jersey Department of Corrections. (Filing No. 23-2, at CM/ECF p. 3). Defendant was subsequently provided, and chose, the option "to be deported as soon as possible." (Filing No. 26-3). Therein, Negrete-Rojas certified that he was waiving his right to a hearing either "as soon as possible" or within "14 days [notice] after I have been given an Order to Show Cause. (Filing No. 26-3). The removal order was then issued pursuant to Defendant's own request and admissions. Filing No. 23-1). Based on the evidence before the court, Negrete-Rojas was afforded the right to a full and fair hearing regarding his 1996 removal.

And Defendant has not pointed to any specific prejudice arising from a lack of sufficient notice of a hearing. Negrete-Rojas claims the "immigration service's failure to notify Negrete-Rojas of the date and time of his deportation hearing rendered the deportation order void and fundamentally unfair" and "[h]ad immigration properly given notice to Negrete-Rojas of the proceedings against him, it is likely that he could have explained his circumstances to the Immigration Judge who may have granted him relief from removal." (Filing No. 22, at CM/ECF pp. 6–7). This conclusory statement is insufficient to meet the burden of proving fundamental unfairness. Negrete-Rojas has presented no facts explaining how his personal circumstances, if known by the Immigration Court, could have altered the outcome of his removal proceeding. Negrete-Rojas has failed to establish that had the OSC contained hearing date and time information, the outcome of the 1996 removal proceeding would (or even could) have been different.

For all the foregoing reasons, the undersigned magistrate judge finds the indictment states all elements of the charge of illegal reentry following a prior deportation in violation of 8 U.S.C. § 1326(a)&(b)(2), and Negrete-Rojas's collateral attack of that prior 1996 deportation must be denied.

Accordingly, IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Chief Judge John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that Defendant's motion to dismiss, Filing No. 21), be denied.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the trial of this case is set to commence before the Honorable John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at 9:00 a.m. on January 7, 2019, or as soon

thereafter as the case may be called, for a duration of two (2) trial days. Jury selection will be held at commencement of trial.

Dated this 6th day of December, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge